## Case No. 13,104.

### SMITH v. SELDEN et al.

[1 Blatchf. 475;[1] 1 Fish. Pat. Rep. 298.]

Circuit Court, N. D. New York. Oct. Term, 1849.

PATENTS—LICENSE—CONTRACT—RESERVATION—OBSCURITY IN GRANT.

1. The terms of a contract examined, with a view to its proper construction, on a motion for a provisional injunction.

2. The words of a granting clause in the contract interpreted, both by themselves and with reference to their subject matter.

3. The question of assigning a limit to the extent of the grant, discussed.

4. The effect of a reservation in the grant considered, as bearing upon the extent of the rights granted.

5. Even in a case of well-founded doubt as to the extent of the grant, perhaps the conclusion should be against the grantor, as being chargeable with any obscurity in that respect in the contract.

This was an application for a provisional injunction. The bill was filed to restrain the defendants [Henry R. Selden and others,] from the use of Morse's electro-magnetic telegraph, as secured by two patents granted to Samuel F. B. Morse, and to compel an account of profits derived from the use of the same, in violation, as was alleged, of the patents, on a line of telegraph constructed and operated by the defendants, extending from Buffalo, N. Y., to Erie, Pa. The plaintiff

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

[Francis O. J. Smith] claimed to be the assignee of the exclusive right to use Morse's patents on a line of telegraph between those two places. The defendants resisted the application, on affidavits. They admitted the construction by them of the line from Buffalo to Erie, and that they were working it by means of Morse's inventions as patented; but they insisted upon their right to do so under and by virtue of a contract entered into on the 13th of June, 1845, between Henry O'Reilly, (one of the defendants,) and Morse, (the patentee,) Leonard D. Gale, Alfred Vail, and Smith, (the plaintiff,) the last four being then the proprietors of Morse's patents.

William H. Seward and Samuel Blatchford, for plaintiff.

Henry R. Selden, for defendants.

NELSON, Circuit Justice. The material question in this case, so far as the motion for a preliminary injunction is concerned, is as to the effect of the contract of the 13th of June, 1845, and whether, upon a proper construction, it embraces the line in dispute.

There are several other questions presented in the bill, and in the affidavits read in opposition to the motion; but they are not subjects of examination or settlement at this time, and will therefore not now be noticed. They can be fitly disposed of, only after the proofs shall have been taken, and on the final hearing. They involve the performance of the contract generally, and the consequences attending a partial failure; also, the validity of the patents under which the plaintiff claims an exclusive right to construct telegraphic lines; and whether or not the defendants are estopped, by reason of the contract, from disputing the plaintiff's title.

The contract provides, among other things, that O'Reilly shall, at his own expense, "use his best endeavors to raise capital for the construction of a line of Morse's electro magnetic telegraph, to connect the great seaboard line at Philadelphia, or at such other convenient point on said line as may approach nearest to Harrisburgh, in Pennsylvania, and from thence, through Harrisburgh, and other intermediate towns, to Pittsburgh, and thence, through Wheeling and Cincinnati, and such other towns and cities as the said O'Reilly and his associates may elect, to St. Louis, and also to the principal towns on the lakes."

Another provision bearing upon the question is as follows: "No preference is to be given to the party of the first part," O'Reilly, "and his associates, in the construction of connecting lines, nor shall any thing herein be construed to prevent an extension by the parties of the second part," who are represented by the plaintiff, "of a line from Buffalo to connect with the lake towns at Erie; nor to prevent the construction of a line from New-Orleans to connect the Western towns directly with that city; but such lines shall not be used to connect any Western cities or towns with each other, which may have been already connected by said O'Reilly."

It is not to be denied, that the territorial extent of line intended to be granted to O'Reilly and his associates under this contract, is somewhat indefinite and doubtful, in consequence of the very general terms used in the description. There are but five towns or cities specifically named, to or through which the line may be run, namely, Harrisburgh, Pittsburgh, Wheeling, Cincinnati, and St. Louis. This may be called, not inappropriately, the base line, extending from the point of starting, through these several towns to St. Louis, and thence to the principal towns on the lakes. Whether it was intended by this last clause to grant the privilege of connecting these towns on the lakes with any of the points on the base line, or only with St. Louis, the last place designated, is matter of doubt. My impression is rather in favor of the former construction; and that the parties intended to embrace within the grant the whole of the territory north of this line, extending to the lakes. Indeed, in any aspect, this would seem to be the effect of the grant; for, by connecting the lake towns with any point upon the line, specifically named, a telegraphic communication would be secured between every part of it and the lake towns. This would be true, whether the connection was at St. Louis, Cincinnati, Pittsburgh, or Harrisburgh; and would be as effectual as if made with each of those places directly. The communication would be more circuitous in the one instance than in the other, but practically about the same. The only or chief object of a direct communication between the lake towns and the several points on the main line, would be to reach intermediate places, if there were any such to justify the expense.

My impression, therefore, is, that the whole of the territory north of the line given, extending to the towns on the lakes, was intended to be included in the grant, and that, under the circumstances, it cannot be implied that any part of it was intended to be reserved. I am now speaking of the granting clause in the contract.

What lakes then were in the contemplation of the parties? Erie? Huron? Michigan? or Lake Superior? or each and all of them? It seems to me, looking upon the map, and at the line given from which a telegraphic communication was to be extended to the towns upon the lakes, that it is quite difficult, in view of the terms used, to assign any satisfactory reason for excluding either of those lakes, or any one of them rather than another. And, if we look out of the contract, and construe it with reference to the subject matter, the conclusion will be the same. The value of the main trunk or line, it was doubtless known, would be much enhanced by connecting it with the principal business towns upon these lakes, all of which are more or less engaged in the vast commerce of the West.

That Erie is one of the lakes referred to, was not denied on the argument; and, if so, I do not see where the limit is to be drawn, or what towns shall be embraced within the words of the grant and what excluded. Any such limit, for aught to be found in the agreement, would be altogether arbitrary and conjectural. It was said on the argument, that unless some limit was found in the construction of this clause, it might comprehend Lake Ontario. The answer, I think, is, that the line specifically named, and the lakes in connection therewith, fairly enough exclude it. The difficulty lies in excluding towns lying upon a lake which it is conceded is embraced within the grant.

The only doubt I entertain upon the case arises out of the other clause in the contract, before referred to as bearing upon the question. Looking at the reservation in that clause as to a line from Buffalo to Erie, in connection with the reservation relating to the line from New-Orleans to connect the Western towns with that city, there is some ground for supposing that the parties contemplated Erie as being the easternmost town upon the lakes, within the grant. And yet there is nothing in the terms themselves of the reservation, necessarily or by fair implication leading to that conclusion. Indeed, those terms seem to lead to a contrary result; for, why reserve a right to the grantors to extend a line from Buffalo to Erie, if such a right was not embraced in the grant to O'Reilly? It may be said, that assuming the town of Erie to have been the most easterly town embraced within the contract, it might be necessary to reserve to the grantors the right specified, in order to connect the town of Erie with their eastern line, as otherwise it would have been in the power of O'Reilly to prohibit their doing so. But, if this had been the only object, why not have expressed it in a way not to be misunderstood? The reservation is, simply, of a right by the parties of the second part, to extend a line from Buffalo to connect with the lake towns at Erie—not an exclusive right; and, is therefore, entirely consistent with a grant to O'Reilly, embracing the several towns upon the lakes, provided such be the true construction of the agreement. I do not say that this reserving clause is not calculated to raise some doubt as to the right claimed by the defendants; but, from all the consideration I have been able to give to the case, I am best satisfied, as at present advised, with the conclusion that they possess it, upon a fair interpretation of the words used by the parties to express their intent and meaning. Even in a case of well founded doubt, perhaps the conclusion should be against the parties who have made the grant, as they are chargeable with any obscurity in this respect in the agreement. But, independently of that consideration, this case is one in which it would not be proper to grant a preliminary injunction.

Motion denied.